CV-71
CV- 30
N/S
PAID

FILED

2026 JUL -9 PM 2:37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA
BY: Bom

PAID

RAYMOND K. WRIGHT (SBN 331950)
Law Office of Raymond K. Wright, Inc.
1950 W. Corporate Way #22686
Anaheim, CA 92801
Telephone: (949) 342-6101
Email: Raymond@rkwrightlaw.com

*Attorney for Plaintiff Verity Investigations, LLC*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

ex rel. VERITY INVESTIGATIONS, LLC,

Plaintiff/Relator,

vs.

CHUN YU WORKS (U.S.A.) INC.,

Defendant.

Case No. 2:26-CV-07462-JAK(BFMx)

**ORIGINAL COMPLAINT FOR VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. § 3729 et seq.**

**FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX**

**Jury Trial Demanded**

# *QUI TAM* COMPLAINT

## I. Introduction

1. This is a *qui tam* case, filed on behalf of the federal government, seeking to recover over $261,000 (plus mandatory trebling) that Defendant wrongfully obtained in the form of a federal guaranteed loan by falsely certifying that it and its affiliates had fewer than 300 employees and that it was not owned by an entity that has significant operations in China. That loan was later forgiven, and the federal government paid the bill.

2. The loan in question was provided by the Small Business Administration's ("SBA's") Paycheck Protection Program ("PPP"). The PPP was created by Congress near the start of the COVID-19 epidemic in the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") in 2020, and then received additional funding ($284 billion) in December 2020 in the "Economic Aid to Hard-Hit Small Businesses, Nonprofits, and Venues Act."[1] 15 U.S.C. § 636(a)(37).

3. In January 2021, SBA authorized a second series of PPP loans, widely referred to as "Second Draw" PPP loans.

4. The Second Draw PPP loans were made available only to "small" businesses. The SBA established a clear, bright-line rule for who counted as "small." Applicants were required to certify, in their application, that they (both the applicant and its affiliates) collectively employed 300 or fewer persons.[2]

---

[1] SBA INSPECTOR GENERAL INSPECTION REPORT, The Small Business Administration's Implementation of Recommended Controls and the Economic Aid Act (Aug. 12, 2021), https://www.sba.gov/sites/sbagov/files/2021-08/SBA%20OIG%20Report%2021-19.pdf.

[2] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

5. The Second Draw PPP loans created additional criteria that an entity with "significant operations" in the People's Republic of China could not own more than 20 percent of the small business applicant.

6. In its Second Draw loan application, Chun Yu Works (U.S.A.) Inc. falsely certified to the SBA (1) that it and its affiliates had 23 employees and (2) that it was not a business concern owned or held by an entity with significant operations in China. As a direct result of those false statements, Defendant obtained a Second Draw PPP loan totaling $261,437, which was later forgiven.

7. Relator is an outside investigative company that detected Defendant's fraud by reviewing Defendant's and Defendant's affiliate's sustainability reports, investor conference reports, financial statements and website information. Those reports demonstrate that Defendant and its affiliates had more than 300 employees during the relevant time period and had a parent with significant operations in China.

## II. <u>The Parties</u>

8. Plaintiff Verity Investigations LLC ("Relator") is an investigative firm formed by two professionals with widespread experience in detecting and reporting fraud on the U.S. public fisc.

9. Defendant Chun Yu Works (U.S.A.) Inc. is a California corporation with its principal place of business in Pomona, California.

## III. <u>Jurisdiction and Venue</u>

10. This action arises under the laws of the United States to redress violations of the Federal False Claims Act, 31 U.S.C. §§ 3729–33 ("FCA").

11. Subject-matter jurisdiction is conferred by 28 U.S.C. §§ 1331, 1345.

12. Venue is proper, and this Court has personal jurisdiction over Defendant, because Defendant is "found" in this District. 31 U.S.C. § 3732(a).

## IV. <u>The False Claims Act</u>

13. The FCA is the primary civil remedial statute designed to deter fraud upon the United States. Its purpose is to "enhance the Government's ability to recover losses sustained as a result of fraud against the Government." S. Rep. No. 99-345, at 1 (July 28, 1986).

14. A defendant violates the FCA when the defendant "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A).

15. Under the FCA, a claim includes a request for money. 31 U.S.C. § 3729(b)(2). A claim is "false or fraudulent" under the FCA if the entity or person submitting the claim was not entitled to payment.

16. In 2009, Congress amended the FCA through the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21 (May 20, 2009), making a defendant liable under the FCA when the defendant "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

17. Under the FCA, the terms "knowing" and "knowingly" mean that the defendant "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A).

18. No proof of specific intent to defraud the Government is required to show that a defendant acted knowingly under the FCA. 31 U.S.C. § 3729(b)(1)(B).

19. The terms "knowing," "knowingly," "knowledge," "knows," and "knew," as used in this Complaint, have the meaning ascribed to them by the FCA.

20. The FCA defines the term "material" as "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

21. The FCA broadly defines a "claim" as "any request or demand . . . for money or property" that: "(i) is presented to an officer, employee, or agent of the United States," or "(ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government (I) provides or has provided any portion of the money or property requested or demanded; or (II) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2).

22. The FCA imposes treble damages plus a civil penalty for each false claim. *See* 31 U.S.C. § 3729(a)(1).

23. The minimum and maximum civil penalty amounts are adjusted for inflation each successive year under the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, § 701, 129 Stat. 584, 599–601 (2015). *See* 28 C.F.R. § 85.5 (identifying applicable inflation adjustments on an annual basis); 31 U.S.C. § 3729(a)(1).

24. As of July 3, 2025, courts must assess a civil penalty of no less than $14,308 and no more than $28,619 per claim for FCA violations that occurred after November 2, 2015. *See* 28 C.F.R. § 85.5 Table 1.

25. False statements made in a loan application to a third-party lender qualify as "false claims" to the government where, as here, the loan is guaranteed by the federal government and the federal government later repays the lender. *See United States v. Van Oosterhout*, 96 F.3d 1491, 1494 (D.C. Cir. 1996).

## V. No "Public Disclosure" and Relator Is An Original Source

26. On information and belief, no "public disclosure" has been made of Defendant's false statements and fraud detailed herein. 31 U.S.C. § 3730(e)(4)(A).

27. On information and belief, Defendant's fraudulent transactions have not been publicly disclosed in a federal criminal, civil, or administrative hearing in which the Government or its agent is a party; in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or by the news media.

28. Even if there had been a "public disclosure," that would not matter in this case because Relator is an "original source of the information" set forth in this complaint. 31 U.S.C. § 3730(e)(4)(A).

29. Relator's knowledge is independent of and materially adds to any publicly disclosed aspects of the fraudulent transaction described herein. Among other things, Relator has "connected the dots" between (a) Defendant's and Defendant's affiliate's annual reports, financial statements, website information and (b) Defendant's false certifications for a PPP loan.

30. Prior to filing this action, Relator voluntarily provided the Government with this complaint and all material evidence in Relator's possession relating to the fraudulent transaction.

## VI. The Second Draw PPP Loan Program

31. To be eligible for a Second Draw PPP loan, borrowers were required to meet three criteria: (1) have "[p]reviously received a First Draw PPP Loan," (2) "[have] no more than 300 employees," and (3) be able to "demonstrate at least a 25% reduction in gross receipts between comparable quarters in 2019 and 2020."[3] 15 U.S.C. § 636(a)(37)(A)(iv).

---

[3] SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://www.sba.gov/funding-programs/loans/covid-19-relief-options/paycheck-protection-program/second-draw-ppp-loan.

32. The SBA's website explained the 300-limit to borrowers. This was explained in an overview page of the website[4] and in the online "Frequently Asked Questions" document available on the website.[5]

33. The SBA's FAQ document stated that this limit was "narrower" than the prior 500-employee limit for the earlier First Draw PPP loans.[6]

34. The SBA's FAQ document warned borrowers that, unlike with the First Draw PPP loans, borrowers would not be allowed to qualify using "SBA's [other] established size standards (either revenue-based or employee-based) or the alternative size standard."[7]

35. The SBA's FAQ stated that "borrowers" were "required to apply SBA's affiliation rules under 13 C.F.R. 121.301(f)" for purposes of the Second Draw loan as well.[8]

36. That regulation—13 C.F.R. § 121.301(f)—stated that when counting "employees," an applicant must include the employees of "all of its domestic and foreign affiliates." 13 C.F.R. § 121.301(f)(6). [9]

37. That regulation defined affiliation broadly:

i. Affiliation includes "affiliation based on ownership." "For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem

---

SMALL BUSINESS ADMINISTRATION, Second Draw PPP loan, https://perma.cc/R74F-68UQ?type=image (as of March 2021).

[5] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, https://perma.cc/5Y8K-CR5Y (as of March 2021).

[6] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[7] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 29, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[8] SMALL BUSINESS ADMINISTRATION, FAQ for PPP Borrowers and Lenders, at 3, https://www.sba.gov/document/support-faq-ppp-borrowers-lenders.

[9] 13 C.F.R. § 121.301(f) (effective March 27, 2020 to September 7, 2021).

the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern. SBA will deem a minority shareholder to be in control, if that individual or entity has the ability, under the concern's charter, by-laws, or shareholder's agreement, to prevent a quorum or otherwise block action by the board of directors or shareholders." *See* 13 C.F.R. § 121.301(f)(1).[10]

ii. Affiliation may also arise "under stock options, convertible securities, and agreements to merge." *See* 13 C.F.R. § 121.301(f)(2).[11]

iii. Affiliation may arise "based on management:" "Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement." *See* 13 C.F.R. § 121.301(f)(3).[12]

iv. Affiliation may arise "based on identity of interest:" "Affiliation arises when there is an identity of interest between close relatives, as defined in 13 CFR 120.10, with identical or substantially identical business or economic interests (such as where the close relatives operate concerns in the same or similar industry in the same geographic area). Where SBA determines that interests should be aggregated, an

---

[10] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).
[11] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).
[12] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).

individual or firm may rebut that determination with evidence showing that the interests deemed to be one are in fact separate." *See* 13 C.F.R. § 121.301(f)(4).[13]

v. Affiliation may arise "based on franchise and license agreements:" "The restraints imposed on a franchisee or licensee by its franchise or license agreement generally will not be considered in determining whether the franchisor or licensor is affiliated with an applicant franchisee or licensee provided the applicant franchisee or licensee has the right to profit from its efforts and bears the risk of loss commensurate with ownership. SBA will only consider the franchise or license agreements of the applicant concern." *See* 13 C.F.R. § 121.301(f)(5).[14]

38. The SBA required borrowers to submit a Borrower Application Form (SBA Form 2483-SD) to a federally insured bank or similar credit institution, which would process the loan application and fund the loan.

39. The SBA Form 2483-SD required the borrower to state the "Number of Employees (including affiliates, if applicable)."

40. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that "[t]he Applicant, together with its affiliates (if applicable) . . . employs no more than 300 employees."

41. For the Second Draw PPP loans, Congress stated that "eligible entity . . . does not include . . . any business concern or entity for which an entity . . . that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or

[13] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).
[14] 13 C.F.R. § 121.301(f) (effective Mar. 27, 2020 to Sept. 7, 2021).

entity, including as equity shares or a capital or profit interest in a limited liability company or partnership." 15 U.S.C. § 636(a)(37)(A)(iv)(III)(cc)(AA).

42. The SBA Form 2483-SD then required the applicant's authorized representative to certify eligibility by signing a statement that:

> The Applicant is not a business concern or entity (a) for which an entity created in or organized under the laws of the People's Republic of China or the Special Administrative Region of Hong Kong, or that has significant operations in the People's Republic of China or the Special Administrative Region of Hong Kong, owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity, including as equity shares or a capital or profit interest in a limited liability company or partnership; or (b) that retains, as a member of the board of directors of the business concern, a person who is a resident of the People's Republic of China.

43. The SBA Form 2483 also required the applicant's authorized representative to initial to "certify that the information provided in this application . . . is true and accurate," and to acknowledge "that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000 . . . ."

44. The SBA guaranteed 100% of the outstanding balance of Defendant's Second Draw PPP loan. The guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

## VII. <u>Defendant Falsely Certified to the SBA Its Compliance With the Second Draw PPP Loan Size Requirements</u>

### A. <u>Background: Defendant Chun Yu Works (U.S.A.) Inc. and Its Affiliates</u>

45. Defendant Chun Yu Works (U.S.A.) Inc. ("Chun Yu") is a California corporation[15] with its principal place of business located in Pomona, California.[16]

---

[15]California, Secretary of State, Chun Yu Works (U.S.A.) Inc. *(File No. 1717959)*, https://bizfileonline.sos.ca.gov/search/business.

[16]Chun Yu's Website – Contact Us, https://www.cywusa.com/contact-us/.

46. Chun Yu can be validly served with process via its registered agent at 1037 Walnut Avenue, Pomona, CA 91766.

47. Chun Yu was founded in 1989 and operates as an importer and distributor within the construction fastener industry. Chun Yu specifies that most of its products are manufactured by its parent company Chun Yu Works Inc. Ltd., and the products are distinguished by the "L" mark on the fastener head.[17]

48. As stated in ¶ 47, *supra*, Chun Yu is a subsidiary of Chun Yu Works & Co., Ltd (Chun Yu Group).[18] Chun Yu Group is located in Kaohsiung, Taiwan and has affiliates throughout Taiwan, Indonesia, the United States and China. Chun Yu Group was founded in 1949 and is focused primarily in the production and manufacturing of various bolts, nuts, tapping screws, and spheroidized wire rods.[19]

49. Chun Yu Group's *2021 Investor Conference* report displays the following as part of Chun Yu Group's corporate group, including:[20]

i. Chun Yu Works (U.S.A.), located in Pomona, CA, USA;

ii. Chun Yu Dongguan, located in Guangdong Province, China;

iii. PT. Moon Lion Indonesia, located in Jakarta, Indonesia;

iv. Shanghai Uchee, located in Shanghai, China;

v. Chun Zu Machinery, located in Kaohsiung City, Taiwan;

vi. Shanghai Chun Zu Machinery, located in Shanghai, China;

vii. Chun Bang Precision, located in Kaohsiung City, Taiwan; and

---

[17] Chun Yu's LinkedIn – About, https://www.linkedin.com/company/cyw/about/.

[18] Chun Yu Group, *2021 Investor Conference,* Page 6, https://mopsov.twse.com.tw/nas/STR/201220211129E001.pdf.

[19] Chun Yu Group's Website – Company Profile, About Chun Yu Group, https://www.chunyu.com.tw/en/company-profile-en/#.

[20] Chun Yu Group, *2021 Investor Conference,* Page 6, https://mopsov.twse.com.tw/nas/STR/201220211129E001.pdf.

viii. Chun Yu Bio-tech, located in Kaohsiung City, Taiwan.

50. On information and belief, Defendant Chun Yu, Chun Yu Group, and the other entities listed in ¶ 49, *supra*, qualify as "affiliates" for purposes of the PPP Loan program under one or more of the alternative definitions provided in 13 C.F.R. § 121.301(f).

## B. Chun Yu's False Statement To Obtain a Second Draw PPP Loan

51. In 2020, Chun Yu submitted a borrower application for a First Draw PPP loan in the amount of $261,437 by lender Chino Commercial Bank, N.A.

52. On or about February 17, 2021, the U.S. government forgave 100% of Chun Yu's First Draw PPP loan, plus interest, in the amount of $263,221.

53. In 2021, Chun Yu applied for a Second Draw PPP loan.

54. Chun Yu submitted its borrower application form, SBA Form 2483-SD, to Chino Commercial Bank, N.A. at 14245 Pipeline Ave, Chino, CA 91710.

55. In its Form 2483-SD, Chun Yu listed its address as 1037 Walnut Ave, Pomona, CA 91766.

56. In its SBA Form 2483-SD, Chun Yu represented that it and its affiliates had 23 employees—under the 300-employee limit needed to be eligible to apply.

57. Chun Yu's representation in SBA Form 2483-SD regarding the total number of its and its affiliates' employees was false. Chun Yu and its affiliates had far more than 300 employees in each of 2019, 2020 and 2021.

58. Chun Yu deliberately ignored the fact that the total number of its and its affiliates' employees numbered in excess of the 300-employee limit for obtaining a Second Draw PPP loan. Chun Yu signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

59. Defendant also certified in SBA Form 2483-SD that it was "not a business concern or entity (a) for which an entity . . . that has significant operations in the People's Republic of China . . . owns or holds, directly or indirectly, not less than 20 percent of the economic interest of the business concern or entity . . . ."

60. Defendant's certification in SBA Form 24-83-SD that it was not a business concern owned or held by an entity that has "significant operations" in China was false. Defendant's parent company has significant operations in China.

61. Defendant deliberately ignored the fact that its parent company has significant operations in China that made Defendant ineligible for a Second Draw PPP loan. Defendant signed its false SBA Form 2483-SD with knowledge of, or reckless disregard for, the truth.

62. On or about March 12, 2021, Chun Yu was approved for a Second Draw PPP loan in the amount of $261,437 by lender Chino Commercial Bank, N.A.

63. The U.S. government paid lender Chino Commercial Bank, N.A. a lender's processing fee of 5% of the $261,437 loan, in the amount of $13,071.85.[21]

64. On or about January 28, 2022, the U.S. government forgave 100% of Chun Yu's Second Draw PPP loan, plus interest, in the amount of $263,657.42.

C. **Evidence of Number of Employees**

65. In its SBA Form 2483-SD, a company must include "the employees of its domestic and foreign affiliates" in calculating its number of employees. *See* 13 C.F.R. § 121.106(b)(1).

66. Chun Yu Group's *2021 Investor Conference* report indicates that Chun Yu Group collectively had **over 2,000 employees** in 2021.[22]

---

[21] Paycheck Protection Program (PPP) Information Sheet: Lenders, https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

[22] Chun Yu Group, *2021 Investor Conference*, Page 5, https://mopsov.twse.com.tw/nas/STR/201220211129E001.pdf.

67. Furthermore, Section 5.1 of Chun Yu Group's *2021 Sustainability Report*, when translated, reveals that Chun Yu Group itself had **575 employees** and **576 employees** in 2020 and 2021, respectively.[23]

68. Accordingly, the employee counts of Defendant and its affiliates greatly surpassed the 300-employee limit for obtaining a Second Draw PPP loan, and Defendant was, thus, not eligible for the Second Draw PPP loan it obtained.

69. On information and belief, Defendant's payroll records from 2019, 2020, and 2021 will confirm what it always knew—that it and its affiliates collectively employed well over 300 employees throughout the time period 2019–2021.

**D. <u>Evidence of Significant Operations in China</u>**

70. Defendant Chun Yu is a wholly owned subsidiary of Chun Yu Group.

71. As listed in in ¶ 49, *supra,* multiple companies located in China were subsidiaries of Chun Yu Group.

72. Chun Yu Group's *2021 Investor Conference* report, indicates that the group has numerous subsidiaries in China, including:[24]

i. Shanghai Uchee, located in Shanghai, China;

ii. Chun Yu Dongguan, located in Guangdong Province, China; and

iii. Shanghai Chun Zu Machinery, located in Shanghai, China.

73. Thus, Defendant's parent has significant operations in China, thereby disqualifying Defendant from the Second Draw PPP loan program.

---

[23] Chun Yu Group, *2021 Sustainability Report*, Page 64, Translated in chatgpt.com (Last translated Jul. 2, 2026).

[24] Chun Yu Group, *2021 Investor Conference,* Page 6, https://mopsov.twse.com.tw/nas/STR/201220211129E001.pdf.

## FIRST CAUSE OF ACTION

**Submitting False Claims for Payment**
**31 U.S.C. § 3729(a)(1)(A)**

74. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

75. Defendant violated 31 U.S.C. § 3729(a)(1)(A) by knowingly presenting and/or causing to be presented to the lender claims for approval of a Second Draw PPP loan.

76. The Defendant's knowingly false claim in its SBA Form 2483 was material to the lender's decisions to issue the Second Draw PPP loan and was material to the SBA's decision to forgive that loan and repay the lender.

77. But for Defendant's knowingly false claims, the lender would not have issued the loan and the SBA would not have forgiven them.

78. The Second Draw PPP loan that Defendant obtained was money that was intended by the Government to be spent or used to advance the Government's program and interest in assisting qualified and eligible small businesses to survive the COVID-19 epidemic and to continue to employ their workers.

79. The Second Draw PPP loan that Defendant obtained was money that the Government effectively and in practice provided to the lender, by means of the Government's 100% guarantee to the lender of repayment by the Government in the case of default by the borrower.

80. The Government later reimbursed the lender 100% of the amounts of Defendant's Second Draw PPP loan, with interest.

## SECOND CAUSE OF ACTION

### Creating a False Record or Statement Material to a False Claim
### 31 U.S.C. § 3729(a)(1)(B)

81. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

82. Defendant violated 31 U.S.C. § 3729(a)(1)(B) by knowingly making or causing to be made false records and statements—namely, its SBA Forms 2483 and included certification—to support false claims submitted to the lender for approval of a Second Draw PPP loan.

83. Defendant's knowingly false records and statements were material to the lender's decisions to issue the Second Draw PPP loan and were material to the SBA's decision to forgive the loan and repay the lender.

84. But for Defendant's knowingly false records and statements, the lender would not have issued the loan and the SBA would not have forgiven it.

## THIRD CAUSE OF ACTION

### Improperly Avoiding an Obligation to Pay or Transmit Money
### 31 U.S.C. § 3729(a)(1)(G)

85. Relator repeats, realleges, and incorporates the allegations set forth in the paragraphs above as though fully set forth herein.

86. Defendant violated 31 U.S.C. § 3729(a)(1)(G) by knowingly and improperly avoiding its obligation to repay the loan to the lender.

87. The term "obligation" means "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment." 31 U.S.C. § 3729(b)(3).

88. Defendant's first "obligation" arose from its lending contract with the lender. That contract required Defendant to repay the loans. The lender was delegated authority to act in the Government's place in providing the loans. *See* 15 U.S.C. § 636(F)(ii). The Government was the loan's guarantor and the Government later paid the full loan amounts, plus interest and processing fees, to the lender after the loan was forgiven.

89. Because Defendant was ineligible to receive the loan in the first place, Defendant was also ineligible to have the loan forgiven. *See* 15 U.S.C. § 637(J)(ii) (only an "eligible entity shall be eligible for forgiveness"); *see also* Business Loan Program Temporary Changes; Paycheck Protection Program—Requirements—Loan Forgiveness, 85 Fed. Reg. 33,004, at 33,005 (June 1, 2020) (if "the borrower was ineligible for the PPP loan based on the provisions of the CARES Act, SBA rules or guidance available at the time of the borrower's loan application, or the terms of the borrower's PPP loan application (for example, because the borrower lacked an adequate basis for the certifications that it made in its PPP loan application), the loan will not be eligible for loan forgiveness"); SBA Procedural Notice No. 5000-20078, at 2 (Jan. 15, 2021) (if "a borrower was ineligible for any portion of its loan amount, forgiveness will be denied for the ineligible portion").[25]

90. In order to obtain forgiveness, Defendant submitted a Forgiveness Application to the lender.[26] The lender and the Government relied on that application in determining to forgive the loan. By submitting a Forgiveness Application, Defendant implicitly certified that it was eligible for the loan in the first place. That certification was false because Defendant was ineligible.

---

[25] https://home.treasury.gov/system/files/136/PPP--Procedural-Notice--PPP-Excess-Loan-Amount-Errors.pdf

[26] https://www.sba.gov/sites/default/files/2021-07/PPP%20--%20Forgiveness%20Application%20and%20Instructions%20--%203508%20%287.30.2021%29-508.pdf

91. In addition, by submitting the Forgiveness Application to the lender, Defendant knowingly and improperly avoided its obligation to repay the loan.

92. In addition to Defendant's "obligation" to repay the loan as required by the loan contract, Defendant also had an "obligation" to repay the value of the loan to the SBA because both the loan and the loan's subsequent forgiveness constituted an "overpayment" to Defendant. 31 U.S.C. § 3729(b)(3) (defining "obligation" to include "an established duty … arising from … retention of any overpayment"). The loan was an "overpayment" because Defendant was not eligible to receive it. *See* 31 U.S.C.A. § 3351(4) (an "overpayment" is an "improper payment" including "any payment to an ineligible recipient"); *id.* (5) ("payment" includes "any transfer or commitment for future transfer of Federal funds such as … loan guarantees").

93. Defendant continues to this day to knowingly and improperly avoid its obligation to repay the value of the loan to the SBA.

94. Defendant had an obligation to pay back the SBA the full amount Defendant received in forgiveness of the Second Draw PPP loan.

## PRAYER FOR RELIEF

**WHEREFORE**, Relator requests judgment against Defendant for: (i) three times the amount of damages that the United States has sustained (including the full amount of the forgiven Second Draw PPP loan and interest thereon, plus all processing fees paid by the Government); (ii) the maximum civil penalties allowed by law; (iii) an award to Relator for the maximum allowed under 31 U.S.C. § 3730(d); (iv) an award of attorney's fees, costs, and expenses; (v) interest as provided by law; and (vi) any other relief that this Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated: July 8, 2026

Respectfully submitted,

By: /s/ Raymond K. Wright

RAYMOND K. WRIGHT (SBN 331950)
Law Office of Raymond K. Wright, Inc.
1950 W. Corporate Way #22686
Anaheim, CA 92801
Telephone: (949)342-6101
Email: Raymond@rkwrightlaw.com

*Attorney for Plaintiff Verity Investigations, LLC*